**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN SANDOVAL AHUACAMA, <br><br> Petitioner, <br> v. <br><br> WARDEN OF ADELANTO ICE PROCESSING CENTER, et al. <br><br> Respondents. | No. 5:26-cv-01900-DSR <br><br> **ORDER GRANTING PETITION AND ISSUING WRIT OF HABEAS CORPUS FOR IMMEDIATE RELEASE** |

## 1.    INTRODUCTION AND PROCEDURAL BACKGROUND

On April 16, 2026, Jonathan Sandoval Ahuacama ("Petitioner"), a noncitizen who has been detained in Immigration and Customs Enforcement ("ICE") custody since on or about March 19, 2026, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging his ongoing detention as violative of his constitutional right to due process, both procedural and substantive. See generally Petition (Doc. No. 1).  The Petition names as Respondents the Warden of the Adelanto detention facility where Petitioner is detained, the United States Attorney General, the Secretary of the Department of Homeland Security, the Director of Immigration and Customs Enforcement ("ICE"), and the Director of the Los Angeles Field Office of ICE, each in his or her official capacity (collectively "Respondents").  Id.  Concurrently with filing the Petition, Petitioner also voluntarily consented under 28 U.S.C. § 636 to have a Magistrate

Judge conduct all further proceedings in this case, including trial and the entry of judgment. See Doc. No. 2. The case became fully consented three days later pursuant to the United States Attorney's Office's General Consent to Disposition by Magistrate Judge in Immigration Habeas Cases. See General Order 26-05 at Ex. "A" (Doc. No. 4); see also Doc. No. 6.

On April 16, 2026, the Clerk of Court served a copy of the Petition on Respondents along with a Notice of General Order 26-05 and Briefing Schedule. See Doc. No. 4. Therein, the Court "direct[ed] Respondents to show cause why the writ of habeas corpus should not be granted" and set a due date for Respondent's Answer within seven days of that Notice, i.e., April 23, 2026. Id. On April 23, 2026, Respondents filed their Answer, in which they stated "Respondents are not presenting an opposition argument at this time," and "[s]hould the Court enter relief, judgment may be entered such that, consistent with the 'expeditious resolution' of § 2241 Immigration Petitions required by the General Order, no more filings or proceedings will be necessary in this matter." See Doc. No. 8.

The Court has read and considered all papers filed by each side. For the reasons discussed below, the Court GRANTS the Petition and issues a Writ of Habeas Corpus ordering Petitioner's immediate release from immigration custody.

## 2.   FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition. Respondents had the opportunity to dispute the facts alleged in the Petition, but declined to do so. See Answer (Doc. No. 8). Accordingly, the facts alleged in the Petition are undisputed and have been conceded by Respondents. See C.D. Cal. L.R. 7-12.

Petitioner is a native and citizen of Peru. Pet. at ¶ 1. Seeking asylum based on death threats received there, Petitioner, his wife, and two-year-old son first entered the United States on or about October 31, 2024, without inspection and were apprehended by immigration officers. Id. at ¶¶ 1, 18-19. Department of

2

Homeland Security ("DHS") officials initially detained the family, then released them on "conditional parole under 8 U.S.C. § 1226(a)(2)(B)"[1] with a Notice to Appear, initiating removal proceedings.  Id. at ¶¶ 19-20.

From the time of that release until March 19, 2026, Petitioner "complied with his conditions of release, including appearing for each of his supervision check-ins and court hearings."  Id. at ¶ 28.  Petitioner has no criminal record.  Id.

On March 19, 2026, Petitioner, his wife, and son appeared for a scheduled ICE check-in.  Id. at ¶ 24.  Instead of following the normal check-in procedure that day, ICE re-arrested Petitioner and his family.  Id.  ICE separated the family, sent Petitioner to the Adelanto ICE Processing Center, and sent his wife and son to the South Texas Family Residential Center in Dilley, Texas.  Id.  ICE did not give the family any notice of an impending re-detention, "or that this check-in would be in any way different from the dozens of ICE check-ins the family had attended previously."  Id. at ¶ 25.  Petitioner was also not provided any "justification for his re-detention, [nor] opportunity to contest his re-detention before a neutral adjudicator before being taken into custody."  Id. at ¶ 53.

Petitioner now challenges his ongoing detention as unlawful and seeks an order compelling his immediate release.  Pet. at ECF p. 17.[2]

**3.      LEGAL STANDARD AND EXHAUSTION REQUIREMENT**

Habeas relief extends to those who can show they are "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Although Congress has barred courts from reviewing certain discretionary decisions concerning detention or release of noncitizens subject to

---

[1]      Such "conditional parole" under Section 1226(a) is also known as release on recognizance ("ROR").  See Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1115 (9th Cir. 2007).

[2]      According to a news report attached to the Petition, Petitioner's wife and son have been released from ICE detention in Texas.  See Pet. at Ex. "E" (Doc. No. 1-2 at ECF p. 17).  That issue does not bear directly on the legality of Petitioner's detention, however, and the Court has not relied on it in analyzing Petitioner's claim in this habeas petition.

removal proceedings, see 8 U.S.C. §§ 1226(e), 1252(g), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law.'" Martinez v. Clark, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)), vacated on other grounds by ___ U.S. ___, 144 S. Ct. 1339, 218 L.Ed.2d 418 (2024). Petitioner makes such reviewable claims here.

Habeas petitioners seeking relief under 28 U.S.C. § 2241 generally must first exhaust all available administrative remedies. See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). However, because this requirement is "prudential" and not a "jurisdictional prerequisite," it is subject to waiver. Id. at 1045-46; Arango Marquez v. INS, 346 F.3d 892, 897 (9th Cir. 2003) ("[T]he district court properly waived exhaustion, because the exhaustion requirement in § 2241 cases is prudential, rather than jurisdictional."). Here, Respondents do not assert any failure by Petitioner to exhaust available administrative remedies. See generally Doc. No. 8. Thus, any potential issue of exhaustion is waived. The Court therefore proceeds to consider the merits of the Petition.

**4.     DISCUSSION**

**A.     Petitioner's Detention Violates Due Process**

Petitioner alleges that his detention violates the Due Process Clause of the Fifth Amendment. See Pet. at ¶¶ 56-62. As previously noted, Respondents affirmatively stated in their Answer that they do not oppose the Petition. See generally Doc. No. 8. Consistent with precedent, courts in this Circuit have regarded such silence as a concession. See e.g., Soleimani v. Larose, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); Singh v. Chiang, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession). Nevertheless, the Court independently

4

evaluates the merits of Petitioner's due process challenge and concludes that his re-detention violates Fifth Amendment due process.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const. amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).  "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'"  Id. at 990 (quoting Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of

adequate procedural protections." Brewster v. Bd. of Ed., 149 F.3d 971, 982 (9th Cir.1998). The first step is to determine whether the individual possesses a liberty or property interest that triggers due process protections. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). If such a constitutionally protected interest exists, the second step applies a three-step balancing test described in Mathews v. Eldridge to assess what procedural safeguards are required. Mathews v. Eldridge, 424 U.S. 319, 334–35 (1976). Only after establishing a constitutionally protected interest does the analysis proceed to the second step.

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

   **i.  Petitioner Has a Constitutionally Protected Liberty Interest in his Release on Recognizance**

As noted above, after Petitioner unlawfully entered the United States and was detained by immigration officials, DHS officials initiated removal proceedings against him and released him on conditional parole / own recognizance.  Pet. at ¶¶ 19-20.  Numerous Federal Courts have recognized a constitutionally protected liberty interest in such release.  Noncitizens in such circumstances "gained a liberty interest in their continued freedom when DHS elected to release them on their own recognizance under section 1226(a), which implied a promise that they would not be re-detained so long as they abided by the terms of their release."  Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 934 (N.D. Cal. 2025); see also Hongwei Zheng v. Kristi Noem, et al., No. EDCV 26-0675 JGB (RAO), 2026 WL 851434, at *3 (C.D. Cal. Mar. 25, 2026) ("the Court finds that under the Fifth Amendment's Due Process Clause, Petitioner has a liberty interest in due process protections prior to re-detention following a grant of release on own recognizance."); Gourav Gourav v. James Janecka, et al., No. EDCV 26-01253-MWF (DSR), 2026 WL 966568, at *2 (C.D. Cal. Apr. 7, 2026) (noncitizen detained upon entry without inspection and seeking asylum who was then released on his own recognizance pending removal proceedings and who thereafter attended his check-ins and immigration court hearings, obtained work authorization, and lived in the community for two years had a protected liberty interest in remaining out of custody following his release on his own recognizance); J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1067, 1069 (E.D. Cal. 2025) (noncitizen detained at border then released pending removal proceedings has protected liberty interest in that own-recognizance release for purposes of due process analysis).  The release on own recognizance of a noncitizen apprehended at the border is an implicit promise that he or she would be able to stay free from detention for the duration of administrative proceedings absent changed circumstances, and thus a protected liberty interest for purposes

of due process analysis.  See Banol, v. Warden, No. 5:26-CV-00529-CAS-ACCV, 2026 WL 776793, at *5 (C.D. Cal. Mar. 19, 2026).

This Court agrees with those cited above that Petitioner has a constitutionally protected liberty interest in his conditional parole / ROR, of which he was deprived when Respondents re-detained him.  Respondents do not dispute the point.  The question then becomes whether Respondents complied with due process in revoking that interest.

### ii.      Respondents' Deprivation of Petitioner's Liberty Interest Failed to Comply with the Requirements of Due Process

To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge.  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Mathews, courts balance the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").  Here, the balance favors Petitioner.

### a.      Private Interest

Petitioner's private interest is substantial.  As discussed above, Petitioner has a recognized interest in his liberty under the terms of his conditional parole / ROR.  "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  United States v. Salerno, 481 U.S. 739, 755 (1987).

"Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process Clause] protects."  Id. at 690.  As such, the first Mathews factor weighs strongly in Petitioner's favor.

**b.**     **Risk of Erroneous Deprivation**

Regarding the second Mathews factor, the risk of erroneous deprivation of that interest through the procedures used is significant because there do not appear to have been any procedures used to determine whether there were grounds to revoke Petitioner's ROR.  According to the Petition, "Respondents re-detained [Petitioner] with no notice, no justification for his re-detention, and no opportunity to contest his re-detention before a neutral adjudicator before being taken into custody."  Pet. at ¶ 53.  Respondents do not contest these allegations, nor do they offer any facts themselves about why Petitioner's ROR was revoked and he was re-detained.  See generally Answer.

Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community.  Zadvydas, 533 U.S. at 690.  "Under federal regulation, DHS's decisions to release [noncitizens] on own recognizance necessarily involved a determination that each Petitioner was not a danger to the community nor a flight risk."  Valencia Zapata, 801 F. Supp. 3d at 934 (citing 8 C.F.R. § 1236.1(c)(8)); see also J.A.E.M., 812 F. Supp. 3d at 1064 (release on own recognizance reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk) (quoting Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017)).

Perhaps there was some change in circumstance that could justify reconsideration of that determination and revocation of Petitioner's ROR (though Respondents do not offer any here).  A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence.  This is a significant procedural

9

safeguard.  Without written notice and a meaningful, individualized hearing, "the risk of an erroneous deprivation of liberty is high because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for his detention."  Fernandez v. Semaia, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229 at *5 (C.D. Cal. Jan. 13, 2026).  As one court has reasoned:

> ICE revoked Petitioner's release at a scheduled check-in based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in advance, and without any meaningful opportunity to be heard.  [Citations omitted].  Proceeding on untested contractor and agency records, with no mechanism for explanation or correction, creates a significant risk of error.  Moreover, Petitioner had previously been found suitable for humanitarian parole, which requires that a noncitizen "present neither a security risk nor a risk of absconding[.]"  [Citation omitted].  A brief pre-deprivation hearing would have substantial value in testing both the factual and legal basis for re-detention.

Asad v. Noem, No. 26-cv-620, 2026 WL 775628, at *3 (W.D. Wash. Mar. 19, 2026).  Of course here, we know even less about what basis (if any) Respondents had to revoke Petitioner's ROR and re-detain him.  Thus, the second Mathews factor similarly favors Petitioner in this case.

### c.    Government Interest

Regarding the third Mathews factor, Respondents do not assert any countervailing interest.  "The government interest in immigration enforcement in general is surely substantial."  Zerezghi v. United States Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020).  As in Zerezghi, however, that is not the interest that needs to be weighed in this case.  The government interest at issue

here is revocation of an ROR and re-detaining Petitioner pending the outcome of removal proceedings, and in doing so without any hearing.  Courts have routinely recognized that such interest is "low."  See, e.g., Gourav Gourav v. James Janecka, supra, 2026 WL 966568, at *3; Fernandez Lopez v. Wofford, No. 1:25-CV-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025); Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025).  "This is particularly so where the Government has not shown — or, as here, attempted to substantively argue — that Petitioner's detention serves either to prevent flight or a danger to the community."  Gourav Gourav, 2026 WL 966568, at *3 (internal quotations and citations omitted).

Thus, the Matthews balance tips decidedly in favor of Petitioner on this record.  The Court therefore concludes that the revocation of Petitioner's conditional parole / ROR and resulting re-detention on March 19, 2026, without notice or a pre-deprivation hearing, violated his procedural due process rights.  See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez, 2025 WL 2959319, at *6 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").  Habeas relief is appropriate on that basis.[3]

---

[3]  Petitioner also claims that his detention violates his right to substantive due process.  See Pet. at ¶¶ 56-58.  He alleges that his "detention bears no 'reasonable relation' to any legitimate government purpose," and instead "is punitive and in violation of the Due Process Clause."  Pet. at ¶ 49.  Respondents do not dispute that allegation.  Nevertheless, Petitioner has not shown that he (cont'd . . .)

11

### B.      Immediate Release is the Appropriate Remedy

Given this violation of Petitioners due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, No. 5:25-cv-2694-KK-ADS, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy."  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's release on his own recognizance / conditional parole before his current re-detention.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy."  Id.; see Esmail v. Noem, No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process.  The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Restoring Petitioner to the status quo also means release under the same conditions that were in place before the wrongful deprivation of that status.  For the same reason that Respondents may not revoke Petitioner's ROR without affording Petitioner due process, they also may not change the conditions of that release without affording Petitioner due process.  Return to the status quo similarly means return to Petitioner any personal property and documents seized at the time of his re-detention.

---

would be entitled to any greater relief beyond what the Court herein orders based on his procedural due process claim upon showing that his re-detention also violated his constitutional right to substantive due process.  Therefore, the Court finds it unnecessary to analyze his substantive due process claim further.

Furthermore, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.  See Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty.  Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").  The Court notes that "Respondents are not presenting an opposition argument at this time."  Doc. No. 8 at 2:6.  Therefore, Respondents have consented to this relief requested by Petitioner.  See C.D. Cal. L.R. 7-12.

Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees and costs under the Equal Access to Justice Act.  Pet. at ECF p. 17:25-26.  The Court will consider requests for costs and attorney's fees upon compliance with Local Rules 54-2 (costs) and 54-7 (attorney's fees).

13

**5. CONCLUSION**

Petitioner is presently in custody of Respondents in violation of the Constitution or laws or treaties of the United States; thus, a Writ of Habeas Corpus should issue pursuant to 28 U.S.C. § 2241 compelling his immediate release.

**IT IS THEREFORE ORDERED** that:

1.  The Petition for Writ of Habeas Corpus is **GRANTED**.

2.  Respondents shall immediately release Petitioner **JONATHAN SANDOVAL AHUACAMA** from custody, reinstate his release under the same conditions that were in place before his detention on March 19, 2026, and return any personal property and documents seized at the time of his detention.

3.  Respondents shall also provide Petitioner with a copy of this Order at or near the time of release.

4.  Within three days of the date of this Order, Respondents shall file a status report confirming Petitioner's release and return of his personal property and documents.

5.  Respondents are enjoined from re-detaining Petitioner without first providing him with notice and a pre-detention hearing before a neutral decisionmaker at which Respondents bear the burden of demonstrating that there has been a material change in circumstances justifying revocation of Petitioner's ROR and re-detention of Petitioner.

6.  The Court will issue Judgment consistent with this Order.  Any fee motion must be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and this Court's Local Rules. The Court retains jurisdiction to adjudicate any collateral enforcement issues.

**IT IS SO ORDERED.**

DATED: May 1, 2026          _____

HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE

14